

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

July 31, 1947

Hon. C. H. Cavness,
State Auditor,
Capitol Station,
Austin, Texas

Opinion No. V-325

Re: Authority of the Comptroller to
pay a University of Texas pro-
fessor who holds, at the same
time, a teaching position in the
Austin Public Schools.

Dear Sir:

Specifically you inquire as to whether it would be a
violation of Section 33, Article XVI of the Constitution for a
professor at The University of Texas, either full time or part
time, also to teach part time in the Austin Public Schools and
draw pay concurrently from both the University of Texas and the
Austin Public Schools.

Section 33 of Article XVI of the Constitution, insofar
as pertinent, is as follows:

"The accounting officers of this State shall
neither draw nor pay a warrant upon the Treasury
in favor of any person, for salary or compensation
as agent, officer or appointee, who holds at the
same time any other office or position of honor,
trust or profit, under this State. . ."

This section pertains only to the authority of the
accounting officers of the State to draw or pay a warrant upon
the Treasury, and has nothing whatever to do with the authority
of a city as a school district to pay the salaries of its
teachers.

In 1913, Lieutenant Governor Mayes desired to accept
a position as Professor of Journalism at The University of Texas.
This Department held, in an opinion by Hon. C. M. Cureton, then
First Assistant Attorney General, later Chief Justice of the
Supreme Court, that:

"A professor in the University of Texas
is not an officer of this State, but is simply
an employee of the Board of Regents of the
University, who holds his position by virtue of
the contract alone. . . .

"From this reasoning we deduce that a professor in the University is, in a limited sense, an agent of the State, but it is also clearly very true that he is an appointee of the State, acting through its Board of Regents. . . . . .

"It is very clear, therefore, that Mr. Mayes, so long as he is Lieutenant Governor, could not under the Constitution draw pay from the State, as (1) agent, (2) officer, (3) appointee of the State.

"As we have above endeavored to show that a professor in the University of Texas is an appointee, or in a limited sense an agent, therefore, Mr. Mayes could not draw a salary from the State as Professor in Journalism in the University.

"The converse of the above proposition is also true, and, therefore, Mr. Mayes, so long as he was the agent or appointee of the State as a Professor of Journalism in the University could not draw his pay as Lieutenant Governor or the State that being an office within the meaning of the Constitution.

"Therefore, should Mr. Mayes accept the position of Professor of Journalism in the University and at the same time hold and exercise the duties of the office of Lieutenant Governor, he could not draw pay for either such office or such position." (Opinion of Sept. 22, 1913).

It remains only to be seen whether or not the University professor, while serving as teacher in the Austin Public Schools, holds a position of honor, trust or profit under this State.

Clearly, as such teacher in the Public Schools of Austin, for reasons stated in our quotations from the Governor Mayes Opinion, he would not hold an office. It is equally clear, however, that while in the employ of the City of Austin as teacher in its Public Schools he would hold a position of honor, trust or profit under this State.

The whole scheme and system of public education in Texas, from the humblest district to the University of the State, is controlled by the laws of the State so that every office or position of honor, trust or profit whatsoever held in any of such schools is "under the laws of this State". Lewis v. Independent School District of Austin, 139 Tex. 83, 161 S.W. (2d) 450; Dupuy

v. State, 125 Tex. Crim. 595, 121 S.W. (2d) 1003.

In Opinion No. 0-4433, rendered in 1942, this Department advised Honorable Clifford B. Jones, President, Texas Technological College, that the regular teachers of the Public School System of Lubbock who instructed and supervised the students of Texas Technological College in their practice teaching courses could not be paid for their services so rendered under Section 33 of Article XVI of the Constitution, because such public school teachers at the time of rendering such service to the college held "positions of honor, trust and profit under the laws of this State."

It could make no difference in our answer to your question that the teacher in the Austin Public Schools was a part-time rather than a full-time teacher. His services would be in virtue of a position of honor, trust or profit regardless of the hours of the day, or the days of the week of the teaching, so long as it has the element of continuity under the terms of the employment. (See this Department's Opinion No. 0-4902 herewith).

You are therefore advised that a professor in the University of Texas, either full time or part time, may not be paid through warrant upon the Treasury for his services if, at the same time he is also employed to teach, either part time or full time in the Austin Public Schools.

### SUMMARY

A professor in The University of Texas, whether full time or part time, may not be paid his salary from the Treasury for his services if at the same time he is employed as a teacher in the Public Schools of the City of Austin. Const. of Tex. Art. XVI, Sec. 33.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

OS:wb:wc

APPROVED:
s/Joe R. Greenhill
ACTING ATTORNEY GENERAL

By s/Ocie Speer
Ocie Speer
Assistant